UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DONALD J. WILLIAMSON,

     Plaintiff,

v.                                                                    Case No. 12-11031
                                                                      HON. AVERN COHN

PETER BADE, DAYNE WALLING,
MICHAEL BROWN, FLINT CITY COUNCIL,
CITY OF FLINT and JOHN DOES 1-5,

     Defendants.

_____/


## MEMORANDUM AND ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS (Doc. 12)
## AND DISMISSING CASE

### I. Introduction

This purports to be a 42 U.S.C. §1983 case. Plaintiff Donald J. Williamson

(Williamson), was mayor of defendant, the City of Flint (Flint), from 2003 to 2009.

Defendant Peter Bade (Bade) was the chief legal officer of Flint beginning in August,

2009. Defendant Dayne Walling (Walling) is now the mayor of Flint. Defendant Michael

Brown (Brown) is the Emergency Financial Manager of Flint. Defendant Flint City

Council (City Council) is the legislative body of Flint. Defendant, Flint, is a Michigan

municipal corporation.[1]

Williamson's First Amended Complaint And Jury Demand (Doc. 7) in a nutshell

claims defendants have wronged Williamson by not paying him his salary during the

---

[1]The first amended complaint also names John Does 1-5 as defendants. The
Does have not been identified; they are DISMISSED.

period he was mayor and by denying him indemnification for his liability in a civil rights case, David Porter, et al. v. City of Flint and Donald Williamson, Case No. 07-14507, in which an arbitration panel awarded substantial damages against Williamson and Flint, as will be described.

Now before the Court is Defendants' Motion For Dismissal Of Plaintiff's [First] Amended Complaint (Doc. 12), in substitution for defendants' Motion For Dismissal Or, In The Alternative, For Summary Judgment On Behalf Of All Defendants (Except John Does) (Doc. 3). For the reasons which follow, the motion is GRANTED.

## II. The First Amended Complaint

The First Amended Complaint is in 14 counts, as follows:

Count I          Violation of 42 U.S.C. §1983 (Retaliation) (Bade)

Count II         Violation of 42 U.S.C. §1983 (Retaliation) (Walling)

Count III        Violation of 42 U.S.C. §1983 (Retaliation) (City Council)

Count IV         Violation of 42 U.S.C. §1983 (Retaliation) (Flint)

Count V          Misrepresentation (Bade and Brown)

Count VI         Breach of Contract (Brown and Flint)

Count VII        Breach of Contract (Flint)

Count VIII       Breach of Implied Contract (Flint)

Count IX         Unjust Enrichment (Flint)

Count X          Quantum Meruit (Flint)

Count XI         Violation of Michigan Payment of Wages Act (Flint)

Count XII        Violation of The Michigan Constitution (no defendant identified)

2

Count XIII      Procedural Due Process Claim Regarding Wages Earned
                But Not Paid (Bade and Flint)

Count XIV       Procedural Due Process Claim Regarding Indemnity (Bade;
                Walling; City Council and Flint)

Counts V, VI, VII, VIII, IX, X, XI and XII are state law claims.  The Court declined

supplemental jurisdiction over these claims and dismissed them.  See Order Dismissing

State Law Claims Without Prejudice (Doc. 19).

Thus, the following claims are at issue:

Count I         Violation of 42 U.S.C. §1983 (Retaliation) (Bade)

Count II        Violation of 42 U.S.C. §1983 (Retaliation) (Walling)

Count III       Violation of 42 U.S.C. §1983 (Retaliation) (City Council)

Count IV        Violation of 42 U.S.C. §1983 (Retaliation) (Flint)

Count XIII      Procedural Due Process Claim Regarding Wages Earned
                But Not Paid (Bade and Flint)

Count XIV       Procedural Due Process Claim Regarding Indemnity (Bade;
                Walling; City Council and Flint)

The relief requested by Williamson as to each count is identical:

Compensatory damages, punitive damages, and award of
interest, costs, and attorney fees, and whatever other relief
the Court deems just and proper at the time of judgment.

The specific allegations of constitutional wrongdoing by defendants is not easy of

understanding because of the excessiveness of the first amended complaint.  As best

the Court understands, the essence of each count is as follows:

- Count I - Violation of 42 U.S.C. §1983 Against Defendant Bade
  (Retaliation)

  . . .to improperly rescind indemnity owed to Mayor
  Williamson and otherwise violate his constitutional rights, in

3

retaliation of his exercise of free speech and other constitutional rights, and attempt to collect payment from him for which there is no legal basis.  (¶105)

- Count II - Violation of 42 U.S.C. §1983 Against Defendant Walling (Retaliation)

  Defendant Walling acted under color of state law, and in retribution for plaintiff's exercise of his First Amendment rights to political speech and association, denied plaintiff indemnification he is entitled to under Flint City Ordinance §35-80.  (¶110)

- Count III - Violation of 42 U.S.C. §1983 Against Defendant Flint City Council (Retaliation)

  The Flint City Council members neglected their duty to equally apply the law, instead denying Mayor Williamson indemnity because of his political speech and political opposition.  (¶115)

- Count IV - Violation of 42 U.S.C. Against Defendant The City of Flint (Retaliation)

  That the City of Flint, via passing a resolution specifically denying Mayor Williamson indemnity, and approving the illegal collection of funds against a former Mayor, in light of the aforementioned facts, issued a policy in direct contravention of the clear constitutional rights of Mayor Donald Williamson, in retaliation for his exercise of his First Amendment rights, and in violation of the protections of due process and equal protection.  (¶119)

- Count XIII - Procedural Due Process Claim Regarding Wages Earned But Not Paid Against Defendants City of Flint, Bade and Official Doe

  Defendants' actions in depriving plaintiff of his constitutionally protected property interest in payment for wages earned without a hearing or other notice of the grounds for the non-payment and an opportunity to respond abridge his right to due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.  (¶168)

- Count XIV - Procedural Due Process Claim Regarding Indemnity Against Defendants City of Flint, Bade, Walling and City Council

4

>Defendants' actions in depriving plaintiff of his
>constitutionally protected property interest in indemnity
>without a hearing or other notice of the grounds for the
>denial of indemnity and an opportunity to respond abridge
>his right to due process of law in violation of the Fourteenth
>Amendment to the U.S. Constitution.

## III.  Background

### A.  Relevant Papers

This case is an outgrowth of Porter, et al v. City of Flint and Donald J. Williamson, Case No.  07-14507.

The following papers describe the nature of Porter:

>Memorandum And Order Denying Defendants' Motion For
>Summary Judgment (Doc. 44)

>Memorandum And Order Denying Defendants' Joint Motion
>For Partial Reconsideration Of Order Denying Defendants'
>Motion For Summary Judgment (Doc. 54)

>In Re Consolidated Arbitration Of The City Of Flint Citizen
>Service Bureau Appointments Arbitration Award (Doc. 89-3)

### B.  Summary of Porter

During the period Williamson was mayor, he created a new bureau in the police department, the Citizens Service Bureau (CSB).  Williamson appointed five (5) police officers to the CSB, four (4) African Americans and one (1) Caucasian.  In 2007, a number of Flint police officers filed lawsuits in Genessee County Circuit Court and federal court claiming race discrimination.  The federal cases were consolidated and assigned to the undersigned.  From the filing of Porter and going forward, Williamson had separate counsel who was compensated by Flint.  In other words, Williamson was indemnified by Flint from the outset of the Porter litigation.

As noted above, the Court denied defendants' motion for summary judgment. Thereafter, in August of 2009, the parties agreed to submit the cases to arbitration. The parties entered several stipulations regarding the arbitration. Williamson resigned as mayor prior to the agreement to arbitrate. Walling succeeded Williamson as mayor in August of 2009. Walling appointed Bade.

Although no longer mayor, Flint was obviously aware that Williamson was a party in the arbitration process. To this end, on October 12, 2009, after the parties signed the agreement to arbitrate, Bade wrote to Williamson's attorney and informed him that Ordinance §35-80 of Flint's Code of Ordinances (Exhibit A) expressly excludes punitive damages from indemnification. Bade advised that "Plaintiffs in the above referenced matters seek punitive damages against Defendant Donald Williamson. This letter is to advise Defendant Williamson of the City's express reservation of rights. The City has no obligation to indemnify defendant Williamson for punitive damages and, in the event punitive damages are awarded against him, may elect not to indemnify him."

However, as it had since the inception of litigation, Flint continued to provide counsel to Williamson in the arbitration.

The case was arbitrated over the course of ten (10) days in January 2011. Williamson testified at the arbitration hearing.

On July 6, 2011, the arbitrators issued a substantial award to the complaining police officers and against Flint and Williamson. The arbitration award totaled $3,825,436.36, which included damages, attorney's fees and costs.[2] The arbitrators did

---

[2]More specifically, the arbitrators awarded emotional distress damages to forty-six (46) police offices for not securing (1) one of the (5) five positions on the CSB. Damage awards ranged from $25,000.00 to $75,000.00 per police officer, for a total

6

not award punitive damages against either Flint or Williamson.

The arbitration award says in part as to Williamson:

> There is insufficient evidence. . .to establish that Defendant
> Williamson acted with knowledge of illegality at the time of
> the challenged conduct. It is possible that the testimony he
> gave in this proceeding was part of a post-hoc effort to
> thwart liability for decisions that he thought to be in the City's
> best interest at the time, but which he has now come to
> realize create significant exposure under state and federal
> civil rights law. Of course, that does not justify the testimony
> that he gave. But for purposes of the punitive damages
> inquiry, this Panel cannot rule out the possibility that
> Defendant Williamson acted in good faith and with the
> honest belief that he was enhancing both the effectiveness
> of the police force and the safety of the community when he
> created and staffed the CSB nearly five years ago, however
> ill-conceived his actions have now proven themselves to be.

On August 8, 2011, Flint moved to vacate the arbitration award. Williamson, for
reasons that are not reflected in the record, did not join in the motion. Several days
later, on August 12, 2011, Flint settled with plaintiffs. The settlement is set forth in the
Payment Agreement, attached as Exhibit 4 to Plaintiff's First Amended Complaint And
Jury Demand (Doc. 6-5 in this case). Williamson, again for reasons not reflected in the
record, did not participate in the discussions regarding settlement. Peculiarly, as part of
the settlement, the complaining police officers assigned their rights to damages from
Williamson to Flint. Having reached a resolution satisfactory to Flint, on August 16,
2011 Flint withdrew its motion to vacate the award. The settlement provides for
payment of the award over a period of years. An initial payment of One Million Dollars

---

emotional distress damage award of $2,475,00.00. The arbitrators also awarded one
police officer emotional distress damages in the amount of $75,000.00 and another
police office economic damages in the amount of $71,424.16 as a result of the officers
being transferred. Finally, the arbitrators awarded attorney fees and costs to the
various counsel. The attorney fees total $1,142,050.00. The costs total $61,961.70.

7

($1,000,000.00) has been made.  Whether any additional payments have been made is not in the record.

On October 20, 2011, plaintiffs moved to confirm the award.  Williamson filed a response to the motion, arguing that any judgment on the award be against Flint and not Williamson because he is fully indemnified.  The award was confirmed on December 8, 2011.  No judgment has been entered on the arbitration award.

## C.  Withdrawal of Indemnification

On November 28, 2011, City Council adopted a resolution entitled "Resolution Concerning Citizens Service Bureau Lawsuits: Denial of Indemnification and Approval of Collection Efforts."  (Exhibit B).  Under this resolution, City Council purports to take away Williamson's indemnification with respect to the arbitration award and approves Flint pursing collection efforts against Williamson.  Williamson says he did not have notice of the resolution being presented to City Council and that he was not aware of the session at which it was adopted.

There is no allegation in the first amended complaint that any effort has been made to compel Williamson to pay or otherwise contribute to the arbitration award.

## IV.  Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).  The court is "not bound to accept as

8

true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).

## V. Discussion

### A. Claims Against Bade, Walling, Brown, and City Council

As an initial matter, the claims against Bade, Walling and Brown, and the particular conduct of each relate to actions they took as public officials, i.e., chief legal officer, mayor and Emergency Financial Manager.  None of these defendants owe Williamson any money for his services as mayor, and none of these defendants have the authority to indemnify Williamson or the authority to deny him indemnification.  Also,

9

the City Council is not a separate political unit.  Rather, it is Flint who owes Williamson unpaid compensation for the services as mayor, if any, and the obligation to indemnify him, if such is the case, as described below.  Thus, the first amended complaint fails to state a plausible claim for relief against Bade, Walling, Brown and the City Council. Accordingly, they are DISMISSED from the case.

### B.  Claims Against Flint

Stripped of its excessiveness, the first amended complaint claims that Williamson has a right to compensation for the period he was mayor which was not paid to him, and a right to indemnification.  Both of these rights, Williamson alleges, are constitutionally protected.

### 1.  Due Process

Regarding Williamson's claim of a constitutional violation based on a denial of due process, the claim fails to state a plausible claim for relief.  Put simply, the right he alleges–the right to indemnification–is not a property right within the meaning of the Fourteenth Amendment.

In Ramsey v. Board of Education of Whitley County, Kentucky, 844 F2d 1268 (6th Cir. 1988), the Sixth Circuit dealt with an analogous situation.  In Ramsey, the plaintiff, a teacher, sued the school board and superintendent under §1983, claiming she was deprived of property without due process of law when the school board reduced the number of her accumulated sick leave days from 142 to 29 and consequently reduced her compensation for sick leave days when she retired.  The Sixth Circuit affirmed the district court's grant of summary judgment in favor of defendants, finding that plaintiff's claim did not involve a deprivation of property

10

actionable under section 1983 but instead was a common law claim for breach of her

employment contract which plaintiff could pursue under state law.  The Sixth Circuit

explained:

. . .

> One essential element of an action under section 1983 is the
> existence of a constitutionally protected liberty or property
> interest.  42 U.S.C. §1983 creates a federal cause of action
> for the deprivation of liberty and property interests protected
> by the United States Constitution or laws. . . .  Thus, Ramsey
> must show she had a property interest in her accumulated
> sick leave days before she can establish that she was
> deprived of her interest without due process of law.
>
> As the Supreme Court has explained, property interests "are
> not created by the Constitution.  Rather, they are created
> and their dimensions are defined by existing rules or
> understandings that stem from an independent source such
> as state law rules or understandings that secure certain
> benefits and that support claims of entitlement to those
> benefits."

Id. at 1271 (citations omitted).

. . .

> Supreme Court decisions that state law provides an
> adequate remedy for a liberty or property deprivation have,
> to date, all involved deprivations which could be remedied by
> a state tort action for damages.  However, a state breach of
> contract action may also provide an adequate remedy for
> some deprivations of a contractually created property
> interest.  Therefore, the reasoning of those cases should
> also bar a section 1983 action when the deprivation is a
> simple breach of contract and there is adequate state breach
> of contract action available as a remedy.

Id. at 1273

. . .

> We emphasize that we do not hold that interferences with
> employment benefits cannot involve deprivation of property.
> We do hold, however, that an interference with a property
> interest in a pure benefit of employment as opposed to an

11

interest in the tenured nature of the employment itself, is an
interest that can be and should be redressed by a state
breach of contract action and not by a federal action under
section 1983.

Id. at 1274-75.

See also Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 195 (2011):

Where a state law such as this is challenged on due process
grounds, we inquire whether the State has deprived the
claimant of a protected property interest, and whether the
State's procedures comport with due process. . . . We
assume, without deciding, that the withholding of money due
respondent under its contracts occurred under color of state
law, and that, as the Court of Appeals concluded,
respondent has a property interest of the kind we considered
in . . . its claim for payment under its contracts. . . . Because
we believe that California law affords respondent sufficient
opportunity to pursue that claim in state court, we conclude
that the California statutory scheme does not deprive G & G
of its claim for payment without due process of law.
(Citations omitted.)

Here, Williamson's right, if any, to indemnification is as a consequence of actions
he took as mayor.  It is an employment right which does not rise to the level of a
protected property right.  As in Ramsey, even if Williamson has a constitutionally
protected interest in indemnification, he has an adequate remedy in the state courts in
which to pursue that interest.  Should Flint sue Williamson for contribution in whole or in
part for the amount it owes under the arbitration award in Porter, Williamson's rights
under Flint City Ordinance §35-80 will come into play as a defense.[3]  This case is not

_____

[3]Of significance is the fact that there is no allegation that Flint has made any
effort to require Williamson to contribute to the payment of the award based on the
resolution.  Indeed, Flint's counsel at oral argument conceded he has not examined
whether Flint has a legally viable claim against Williamson for contribution in the
payment of the arbitration award.  See Northwest Airlines, Inc. v. Transport Workers
Union of America, 451 U.S. 77 (1981).

the proper vehicle for dealing with the question of indemnification.

## 2. Retaliation

Williamson also claims that Flint retaliated against him for engaging in protected speech.  This Circuit reviews a First Amendment retaliation claims are reviewed under a three-step analysis.  Williamson must establish that he:

> (1) engaged in constitutionally protected conduct; (2) an adverse action was taken against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.

Fritz v. Charter Tp. of Comstock, 592 F.3d 718, 723 (6th Cir. 2010) (citations omitted). If Williamson can establish the first three elements, then the burden shifts to Flint to show that "[it] would have taken the same action in the absence of the protected activity."  Thaddeus -X v. Blatter, 175 F.3d 378, 399 (6th Cir.1999) (en banc).

The problem for Williamson is whether his speech was protected at all. Whatever Williamson may have said, he said as mayor, and not as a citizen.  See Weisbarth v. Geauga Park District, 499 F3d 538, 542 (6th Cir.  2007) ("In order for a government employee to warrant First Amendment protection. . .[there is] the threshold requirement that the employee. . .must have spoken as a citizen.").  While Williamson says that the first amended complaint alleges he was retaliated against for statements made both during and after the time he was mayor, the amended complaint does not sufficiently allege Williamson engaged in protected speech.  Rather, all of his speech was directed at matters regarding the creation of the CSB.

Here, even assuming Williamson engaged in protected speech after his tenure as mayor and about matters of public concern, he has not stated that he has suffered

13

an adverse action nor a causal connection between any adverse action and his speech. While Williamson says that the resolution denying him indemnification was an adverse action, Flint has taken no steps toward requiring Williamson to pay for the award. At best, he has alleged a possibility that some adverse action may be taken against him in the future. This is not sufficient.

Moreover, under the third element, "[P]laintiff must show that the decision was motivated, at least in part, by the [P]laintiff's protected activity" or show a causal connection between the first and second elements. Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir.2001) (citation omitted). Williamson must "proffer evidence sufficient to raise the inference that his ... protected activity was a motivating factor for the adverse decision." Arnett v. Myers, 281 F.3d 552, 560 (6th Cir. 2002).

Williamson has not alleged the requisite showing that any alleged protected activity was a motivating factor for Flint's passing of the resolution. The first amended complaint is vague as to the timing of the alleged protected speech, the nature of the speech, and the relationship to the purported denial of indemnification.

## VI. Conclusion

That Williamson is unhappy with the fact that the City Council is on record as ostensibly denying him indemnification, and Flint may look to him to contribute to the arbitration award is understandable. However, what is not understandable is the fact that Flint paid for counsel to Williamson in his defense from the inception of the Porter litigation through the arbitration. Flint now takes the position that Williamson has responsibility for payment of a portion of the arbitration award. Also, what is not understandable is the apparent excessiveness of the arbitration award. See n.2, supra.

14

Equally perplexing is the fact that Flint failed to challenge the appropriateness or the excessiveness of the award and in settlement of the award took an assignment of the police officers' rights against Williamson.  Why Williamson did not go forward with his own challenge to the award is also not explained.

Notwithstanding the several mysteries in this case, while Williamson may be sorely aggrieved by the manner in which Flint has and is treating him, this is not a case for federal court as currently plead in the first amended complaint.

Accordingly, defendants' motion to dismiss has been granted.  This case is DISMISSED.

SO ORDERED.


 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  November 29, 2012


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 29, 2012, by electronic and/or ordinary mail.

 s/Sakne Chami
Case Manager, (313) 234-5160

EXHIBIT A

City of Flint, MI Code of Ordinances

## § 35-80  INDEMNIFICATION OF OFFICIALS, APPOINTEES AND EMPLOYEES.

(a)    The city shall indemnify and hold harmless persons who have been and/or are employed as members of the City Council, Judges of the 68th Judicial District, appointees of the Judges of the 68th Judicial District, the City Administrator, appointees of the City Administrator, appointees of the City Council, Ombudsman, appointees of the Ombudsman, the Mayor, and appointees of the Mayor provided for in Sections 4-202 and 4-203 of the Charter of the City of Flint, and private citizens appointed to multiple member bodies, and other employees of the City of Flint whenever any claim is made or any civil action is instituted against said individual arising out of the good faith performance, purported performance, or failure of performance of duties while in the course of his or her employment, and while acting within the scope of his or her authority.

(b)    The city retains the right to compromise, settle and pay such claim(s) before or after the commencement of any civil action.

(c)    Whenever any order, opinion, or judgment for damages, excluding punitive damages, is awarded as against the individual being indemnified as the result of any civil action for personal injuries, property damage, or other damages allegedly caused by said individual while in the course of his or her service or employment, and while acting within the scope of his or her authority, the city shall indemnify said individual and/or shall pay, settle, or compromise the order, opinion or judgment.

(d)    The chief legal officer, pursuant the officer's duties as set forth in the Flint City Charter, shall retain the right to make the selection of the attorney or attorneys to represent the individual being indemnified in all cases.

(e)    The city will notify the individual being indemnified prior to final settlement of litigation where the individual is a named party.

(f)    The city shall hold the individual being indemnified harmless from any expenses connected with the defense, settlement or monetary judgments from such actions, claims or proceedings.

(g)    This section shall cover all alleged acts for which the statute of limitations has yet to run.

(Ord. 3560, passed 6-9-04)

**Disclaimer:**
This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality. American Legal Publishing Corporation provides these documents for informational purposes only. These documents should not be relied upon as the definitive authority for local legislation. Additionally, the formatting and pagination of the posted documents varies from the formatting and pagination of the official copy. The official printed copy of a Code of Ordinances should be consulted prior to any action being taken.

For further information regarding the official version of any of this Code of Ordinances or other documents posted on this site, please contact the Municipality directly or contact American Legal Publishing toll-free at 800-445-5588.

© 2011 American Legal Publishing Corporation
techsupport@amlegal.com
1.800.445.5588.

EXHIBIT B

*111505*

PRESENTED: NOV 2 2 2011

ADOPTED:  NOV 2 8 2011

## RESOLUTION CONCERNING CITIZENS SERVICE BUREAU LAWSUITS: DENIAL OF INDEMNIFICATION AND APPROVAL OF COLLECTION EFFORTS

**WHEREAS,** The City of Flint is a party to litigation arising from allegations of racial discrimination and retaliation when former Mayor Donald J. Williamson created the Citizen's Service Bureau (CSB), those being the cases of David Porter, *et al.* v City of Flint and Donald J. Williamson, et al, being Case Number 07-14507, pending in U.S. District Court for the Eastern District of Michigan, Southern Division, and Mike Angus, *et al.* v. Donald J. Williamson, Case Numbers 09-92472-CL, 09-92480-CL, 09-92391-CL, 09-92481-CL, 09-92407-CL, pending in the Circuit Court for the County of Genesee, State of Michigan; and

**WHEREAS,** the parties entered into an Arbitration Agreement on December 11, 2009, which consolidated all pending CSB matters; and

**WHEREAS,** the arbitration occurred over ten (10) days in January, 2011 and resulted in an arbitration award issued July 6, 2011 against Defendant City of Flint and Defendant Donald J. Williamson for $3,825,435.70 plus judgment interest under MCL 600.6013; and

**WHEREAS,** the arbitrators specifically provided that the arbitration award was joint and several, meaning the award could be collected from either or both of the defendants; and

**WHEREAS,** the arbitrators described Defendant Williamson's conduct and decision making as "ill-advised," "rash," "arrogant," "impulsive," and "misguided"; and

**WHEREAS,** the arbitrators concluded Defendant Williamson "failed to be open and honest" in his testimony and were "deeply disturbed by his apparent refusal to honor his oath"; and

**WHEREAS,** the arbitrators concluded Defendant Williamson disregarded the advice of his police chief, disregarding existing procedures that governed how promotions in the police department were to be made, and made appointments to the CSB without consulting his police chief; and

**WHEREAS,** the arbitrators concluded Defendant Williamson clearly violated the law and made appointments to the CSB illegally based on race to promote his own political interests; and

**WHEREAS,** the arbitrators concluded Defendant Williamson violated police officers' first amendment rights by retaliating against them; and

1

WHEREAS, Defendant Williamson did not appeal the findings of the arbitrators; and

WHEREAS, based on the findings of the arbitrators, Defendant Williamson was not acting in good faith or within the scope of his employment when he formed the CSB or retaliated against police officers; and

WHEREAS, under the circumstances of the case, Defendant Williamson is not entitled to indemnification under City Code §35-80 and, absent court order to do so, the City should not indemnify Defendant Williamson; and

WHEREAS, the City of Flint has negotiated a payment agreement with the CSB plaintiffs pursuant to which the arbitration award will be paid in installments of $1,000,000 in September, 2011, $500,000 on or before June 1, 2012, $500,000 on or before September 1, 2012; and on or before January 15, 2013 the total remaining amount owed including judgment interest.

WHEREAS, the CSB plaintiffs have assigned to the City of Flint their right to collect the judgments from Defendant Williamson, meaning the City of Flint may collect from him the judgments; and

WHEREAS, the City of Flint, through the Chief Legal Officer, is actively seeking to collect the arbitration award/judgments from Defendant Williamson; and

WHEREAS, Defendant Williamson has requested the City of Flint indemnify him pursuant to Flint City Code §35-80, but that request has been denied by the Chief Legal Officer.

THEREFORE BE IT RESOLVED, that Defendant Donald J. Williamson is not entitled to indemnification under Flint City Code §35-80 and the City of Flint should not indemnify him.

BE IT FURTHER RESOLVED that the Chief Legal Officer should continue with efforts to collect the arbitration award/judgments from Defendant Donald J. Williamson.

APPROVED AS TO FORM:

Peter M. Bade
Chief Legal Officer

APPROVED BY
CITY COUNCIL

NOV 28 2011

2